IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LOUIS JACKSON,                          )
                                        )
                 Plaintiff,             )
                                        )    CIVIL ACTION
v.                                      )
                                        )    No. 08-2157-CM-JTR
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                 Defendant.             )
_____ )

REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the ALJ's RFC assessment, the court recommends the decision be REVERSED and the case be REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g).

I.   Background

Plaintiff applied for SSI on Dec. 16, 2003, and his application was denied initially and upon reconsideration. (R. 15-25, 27-28, 62-66). Plaintiff requested an Administrative Law Judge (ALJ) hearing, which was held on Aug. 10, 2007. (R. 15,

38-40, 319-55).  At the hearing, plaintiff was represented by a non-attorney representative of the Kansas Legal Services, and testimony was taken from plaintiff and a vocational expert (VE). (R. 319-20).  On Aug. 28, 2007, ALJ Evelyn Gunn issued her decision denying plaintiff's application.  (R. 15-25).

In the decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since he applied for SSI, and that plaintiff has severe impairments of degenerative arthritis, disorder of the spine, "diminished left ear hearing and a history of a psychotic disorder," but that his impairments do not meet or equal the severity of an impairment in the Listing of Impairments.  (R. 17).  The ALJ found that plaintiff's allegations of limitations resulting from his impairments are not fully credible; gave minimal weight to the opinion of the examining psychologist, Dr. Bean; gave little weight to the opinion of treating physician, Dr. McIntosh; and gave some but not controlling weight to the opinions of the state agency medical consultants.  (R. 19, 21-23).  The ALJ concluded that plaintiff has the residual functional capacity (RFC) for simple, unskilled, light work with the ability to understand and carry out simple instructions and tasks; limited by the ability to perform postural positions only occasionally, and an inability to climb ladders, ropes, or scaffolds.  (R. 17A).  The ALJ found plaintiff is unable to perform his past relevant work, but is

-2-

able to perform other work existing in the economy, represented by jobs including food and beverage order clerk, hand mounter, flagger, or fast food worker.  (R. 23-24).  Therefore, she concluded that plaintiff is not disabled pursuant to the Act and the regulations, and denied his application.  (R. 25).

Plaintiff disagreed with the ALJ's decision and sought review by the Appeals Council.  (R. 308-09).  The Appeals Council considered additional material presented by plaintiff and plaintiff's reasons for disagreeing with the decision, but found no reason under their rules to review the decision.  (R. 8-10).  Therefore, they denied the request for review, and the ALJ decision is the final decision of the Commissioner.  Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of the decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance,

-3-

and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 416.920

-4-

(2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920. This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in ignoring Dr. Bean's
opinion, in not including any hearing limitations in plaintiff's
RFC, and in accepting the vocational expert's (VE) testimony that
the job of "hand mounter" could be performed by an individual
with the RFC assessed for plaintiff.  The Commissioner argues
that the ALJ properly considered and weighed Dr. Bean's opinion,
properly determined plaintiff's hearing loss does not diminish
his RFC, and properly relied upon the VE testimony.  The court
will address each allegation of error in the order presented in
plaintiff's brief.

## III. Evaluation of Dr. Bean's Medical Opinion

Plaintiff claims that although the ALJ referred to parts of
Dr. Bean's consultative report, she ignored the psychologist's
key finding that plaintiff has a GAF[1] score of 50, which
represents "**serious symptoms OR any serious impairment in . . .**

_____

[1]Global Assessment of Functioning.  A GAF score is a
subjective determination which represents "the clinician's
judgment of the individual's overall level of functioning."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders (DSM-IV) 30 (4th ed. 1994).  The GAF Scale ranges from
100 (superior functioning) to 1 (persistent danger of severely
hurting self or others, persistent inability to maintain minimal
personal hygiene, or serious suicidal act with clear expectation
of death).  Id. at 32.  GAF is a classification system providing
objective evidence of a degree of mental impairment.  Birnell v.
Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt
v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

**occupational . . . functioning** (e.g. unable to keep a job)."
(Pl. Br. 3-4)(quoting DSM-IV at 34)(emphasis in original)
(ellipses in plaintiff's brief).  He argues that it was error for
the ALJ not to factor this "apparent inability of Jackson to
maintain a job" into the RFC assessed or the hypothetical
question presented to the VE.  (Pl. Br. 4).  The Commissioner
admits that the ALJ did not mention the GAF score assessed by Dr.
Bean, but argues that the ALJ explained why she discounted Dr.
Bean's opinion, that substantial evidence supports that
determination, and discussion of the GAF is not necessary.
(Comm'r Br. 11-13).  The court agrees with the Commissioner.

As the Commissioner points out, the ALJ discussed Dr. Bean's
medical opinion and explained that she gave the opinion "minimal
weight."  (R. 20, 21).  The court quotes the entire discussion:

> A July 22, 2004 consultative psychological evaluation
> by Bruce W. Bean, Ph.D., reveals claimant was
> cooperative and compliant, had slow speech but no
> articulation difficulties or language deficiencies, a
> flat affect, logical and goal directed thought
> processes and no tangential thought, flight of ideas or
> perseveration.  He showed no evidence of phobias,
> obsessions or compulsions and denied a history of
> hallucinations.  The claimant was oriented, did not
> exhibit any problems with focus, attention or
> concentration, did mental calculations quickly and
> accurately and had adequate memory function, low
> average intellectual functioning, good vocabulary
> skills, a good fund of general background information
> and adequate practical reasoning and social judgment.
> The claimant reported he was depressed but Dr. Bean
> noted that previous psychiatric records available to
> him did not refer to any issue related to depression
> either by claimant's report or evaluation by a mental
> health professional.  Dr. Bean indicated claimant had

> the capacity to develop and maintain relationships if
> motivated and the cognitive abilities to perform tasks
> with appropriate training and supervision if motivated.
> Dr. Bean stated the claimant's motivation and
> willingness to focus beyond his past difficulties and
> move on with his life were very much in question.

(R. 20)(citing Ex. B6F/1-4 (R. 202-05)).

Thereafter, the ALJ explained the weight given to Dr. Bean's

medical opinion:

> The undersigned give [sic] minimal weight to the
> opinion of Dr. Bean in the July 22, 2004 consultative
> psychological evaluation because it is based upon a one
> time evaluation of the claimant and subjective
> complaints of the claimant.  There is no evidence that
> claimant sought psychiatric care until he recently
> began treatment in July 2007.  The evidence of record
> does not suggest that claimant has a debilitating
> condition that would preclude that [sic] claimant from
> performing simple unskilled work that exists in
> significant numbers.  Therefore the undersigned finds
> that the evidence and testimony of record does not
> corroborate the claimant allegation [sic] that he has a
> disabling mental condition.

(R. 21).  As plaintiff argues and the Commissioner admits, the

ALJ did not mention the GAF score of 50 assigned by Dr. Bean.

However, as the Commissioner points out and as quoted above,

the ALJ properly summarized Dr. Bean's opinion and explained her

reasons for discounting the opinion.  Plaintiff does not allege

any error in summarizing the opinion or in the reasons given for

discounting the opinion.  Rather, he argues that the ALJ erred by

ignoring the key finding revealed in the GAF score--that

plaintiff is unable to work (Pl. Br. 3-4).

Plaintiff's argument rests upon two assumptions--(1) that the GAF score of 50 was Dr. Bean's key finding, and (2) that the GAF score of 50 is based upon plaintiff's inability to work. Neither of these assumptions is supported by the evidence of record.  Although Dr. Bean opined that plaintiff's motivation and willingness to move on with his life are "very much in question," he did not opine that plaintiff is unable to work.  (R. 205). Moreover, the GAF score occupies only a minor place in Dr. Bean's report.  It occurs only in the "DIAGNOSTIC IMPRESSION" section of the report in which Dr. Bean classified his diagnosis in each of five axes, i.e., "AXIS V:  50."  (R. 205).  As both plaintiff and the Commissioner accept, Axis V of a multiaxial assessment consists of the clinician's assigned GAF score.  DSM-IV, 25-33. However, Dr. Bean's report does not mention "Global Assessment of Functioning" or "GAF," and there is no discussion or explanation of the particular Axis V diagnosis.  Beyond the bare diagnosis, GAF is simply not mentioned by the psychologist.  On this record, the evidence does not support plaintiff's assertion that the GAF score of 50 represents the key finding of Dr. Bean's report.

Further, Dr. Bean's report provides no support for plaintiff's assumption that the GAF score is based upon plaintiff's inability to work.  Rather, in quoting the DSM-IV, plaintiff implies that a GAF score of 50 necessarily represents an inability to keep a job--"**serious symptoms OR any serious**

**impairment in . . . occupational . . . functioning** (e.g. unable to keep a job)." (Pl. Br. 3)(quoting DSM-IV)(emphasis in original)(ellipses in plaintiff's brief). However, plaintiff appears to have edited the quote to yield the desired implication. The DSM-IV's complete explanation for GAF scores in the range of 41-50 is as follows: "**Serious symptoms** (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in <u>social</u>, occupational, <u>or</u> <u>school</u> functioning** (e.g., <u>no friends</u>, unable to keep a job)." DSM-IV, at 32(bold in original, underlines added for emphasis). Thus, the DSM-IV reveals that a GAF score in the range of 41-50 may be the result of serious symptoms <u>or</u> serious impairment in <u>social</u>, <u>occupational</u>, or <u>school</u> functioning and is by no means <u>necessarily</u> (or even <u>apparently</u>) the result of an inability to keep a job as plaintiff's brief suggests. Because a GAF score may not relate specifically to an ability to work, a score in the range 41-50 "standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities." <u>Eden v. Barnhart</u>, No. 04-7019, 2004 WL 2051382 at *2 (10th Cir. Sept. 15, 2004).

In fact, Dr. Bean's report provides some support for concluding that the GAF score here might be based upon social functioning rather than occupational functioning. Dr. Bean discussed plaintiff's social functioning and noted, "Mr. Jackson

-10-

indicates he has no friends.  He describes himself as being a

hermit." (R. 203).  Although the ALJ did not do so, and the

court will not do so, these statements provide some support for

arguing that plaintiff was assessed a GAF score of 50 because of

his social functioning--he has no friends.  In any case, the

evidence does not support plaintiff's assertion that the score

was assigned because plaintiff is unable to work.

The court concludes that the GAF score of 50 does not

represent Dr. Bean's key finding and does not establish that Dr.

Bean is of the opinion that plaintiff is unable to work.  An ALJ

is not required to discuss every piece of evidence.  Rather, he

must discuss evidence supporting his decision, uncontroverted

evidence he chooses not to rely upon, and significantly probative

evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010

(10th Cir. 1996).  As the discussion above suggests, the GAF

score assigned by Dr. Bean is not significantly probative of an

inability to work.  Neither is it uncontroverted.  The record

reveals plaintiff was assessed with GAF scores of 75 on May 9,

2002 (R. 154), 75 on Jul. 31, 2003 (R. 149), and 70 on Jan. 21,

2004.  (R. 159).  Therefore, the court finds the ALJ's failure to

specifically mention Dr. Bean's GAF score was not error.[2]

---

[2]Although the court finds no error in the ALJ's
consideration of the GAF score assigned by Dr. Bean, the
Commissioner would be well-advised on remand to specifically
discuss the consideration given that score.

IV.  **Hearing Limitation**

Plaintiff claims it was error for the ALJ to find that plaintiff has a severe impairment of diminished left ear hearing, but to fail to include any hearing limitation in the RFC assessed.  (Pl. Br. 5).  He notes that the <u>Dictionary of Occupational Titles</u> (<u>DOT</u>) includes "hearing" within the requirements of each of the representative jobs relied upon by the ALJ, except for the job of a hand mounter.  Therefore, plaintiff reasons that the VE's answers may have been different if hearing limitations had been included in the RFC hypothetical presented, that substantial evidence does not support the RFC assessment, and that these three representative jobs would probably have been eliminated if a hearing limitation had been included.  (Pl. Br. 5-6).

The Commissioner disagrees.  He acknowledges the ALJ's findings that diminished left ear hearing is one of plaintiff's severe impairments and that the RFC assessment included no limitation due to hearing loss, but argues the ALJ found that difficulty with localization of sounds is the only limitation resulting from plaintiff's diminished left ear hearing.  (Comm'r Br. 14).  He asserts this finding is supported by substantial evidence in the record, and the ALJ's RFC assessment and hypothetical question is, therefore, proper.  (Comm'r Br. 14-15).

The Commissioner has promulgated regulations regarding assessment of RFC. 20 C.F.R. §§ 416.945-946. In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s). Id. at § 416.945(a). The assessment is to be based upon all relevant evidence in the record and is to include consideration of the limitations caused by all of claimant's impairments, including impairments which are not "severe" as defined in the regulations. Id. at § 416.945. The assessment is to consider physical abilities, mental abilities, other abilities such as hearing and seeing, and the ability to tolerate various work environments. Id.; see also § 416.921 (listing examples of basic work activities which may be affected by impairments).

Here, the ALJ considered plaintiff's capacity for hearing:

As for claimant's decreased hearing, the undersigned notes that claimant testified he is deaf in the left ear and a deteriorating bone in the face is affecting the hearing in his right ear also. A December 29, 2003 clinical note indicates claimant had deafness in the left ear and had difficulty with localization of sounds (Ex. B3F/2).

While the claimant has hearing loss in one ear, there is no indication that claimant had any limitation other than difficulty with localizations [sic] of sounds as a result of this impairments. [sic] No treating or examining medical professional stated the claimant would have any disabling limitation on his residual functional capacity due to having hearing loss in one ear. This evidence persuades the undersigned that claimant's hearing loss is not disabling.

(R. 19-20)(citing Ex. B3F/2 (R. 180)).  Thus, the ALJ found,
despite plaintiff's allegation of problems with the right ear,[3]
that plaintiff is deaf in his left ear and that plaintiff's only
limitation on hearing is difficulty with localization of sounds.
However the ALJ did not include deafness or difficulty with
localization of sounds in plaintiff's RFC.

     Plaintiff claims this is error and remand is necessary
because three of the representative jobs suggested by the VE
would have been eliminated if the ALJ had included a hearing
limitation in the RFC assessed.  (Pl. Br. 5-6).  The Commissioner
argues that the ALJ properly found the hearing loss not
disabling, and that finding is supported by substantial evidence.
(Comm'r Br. 14).  Finally the Commissioner argues the ALJ
included all credible limitations in the hypothetical, the VE's
response is substantial evidence upon which the ALJ might
properly rely, and "Plaintiff's speculation about what the
vocational expert might have said if Plaintiff had a different
RFC is irrelevant."  Id., at 16.

     As quoted above, the ALJ considered the evidence and
determined that plaintiff's deafness in the left ear caused
difficulty with localization of sounds.  The evidence supports
that finding.  The Commissioner acknowledged that finding.  Id.,

_____

     [3]The court notes that the ALJ found plaintiff's allegations
concerning his symptoms "not entirely credible" (R. 23), and
plaintiff does no allege error in this finding.

-14-

at 14("The ALJ noted Plaintiff's only limitation resulting from hearing loss was difficulty with localization of sounds."). However, the RFC assessed by the ALJ and presented in her hypothetical questioning to the VE does not include any reference to deafness or difficulty with localization of sounds.

It is settled law in this circuit that "'[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner]'s decision.'" <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1024 n.5 (10th Cir. 1996); <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1340 (10th Cir. 1993); <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1492 (10th Cir. 1991)(quoting <u>Ekeland v. Bowen</u>, 899 F.2d 719, 722 (8th Cir. 1990)).  Because the hypothetical presented to the VE did not include plaintiff's deafness and resulting difficulty with localization of sounds, the VE's testimony that plaintiff is able to perform certain representative jobs is not substantial evidence upon which the ALJ may properly rely.  Therefore, the ALJ's finding that plaintiff is able to perform certain representative jobs is not supported by substantial evidence in the record, and this case must be remanded for proper assessment of plaintiff's RFC and proper hypothetical questioning relating that RFC assessment to the VE.

**V.    VE Testimony Regarding the Hand Mounter Job**

-15-

Plaintiff points out that the ALJ assessed plaintiff with the RFC for simple, unskilled work limited by the ability to understand and carry out simple instructions and tasks, and included these limitations in the hypothetical presented to the VE.  (Pl. Br. 7).  He notes the VE testified that an individual with such limitations would be able to perform the job of a hand mounter in the photofinishing industry.  <u>Id.</u>  Plaintiff points to the <u>DOT</u>'s explanation that the "Reasoning Level" necessary for this job requires the incumbent to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  (Pl. Br. 7)(quoting <u>DOT</u> job description 976 684 018, Ex. 4 to Pl. Br.).[4] Plaintiff then asserts, based upon definitions from the 2006 edition of <u>Random House Unabridged Dictionary</u>, that "simple" as used in the ALJ's RFC, and "detailed" as used in the <u>DOT</u> job description are mutually exclusive terms which the ALJ failed to reconcile.  (Pl. Br. 7-8).  He asserts that this alleged failure requires the representative job of hand mounter be excluded from

--------

[4]The court notes that although not mentioned by plaintiff, the job descriptions for the representative jobs of flagger and fast food worker also include <u>identical</u> "Reasoning Level 2" requirements, and the representative job of food and beverage order clerk has a requirement for "Reasoning Level 3:"  "Apply commonsense understanding to carry out instructions furnished in written oral <u>or diagrammatic form</u>.  Deal with problems involving <u>several concrete variables</u> in or from standardized situations." (Pl. Br., Exs. 1, 2, & 3)(emphases added).

-16-

consideration as a representative job of which plaintiff is capable at step five of the sequential evaluation process. The Commissioner argues that the job of hand mounter is unskilled work, does not involve complex instructions or tasks, and that "detailed but uninvolved" instructions as used in the job description is not mutually exclusive of simple, unskilled work involving simple instructions and tasks. (Comm'r Br. 16-17). The court agrees with the Commissioner.

Plaintiff's argument is not supported by the evidence. As plaintiff admits, the ALJ included the relevant portion of her RFC in the hypothetical to the VE. (Pl. Br. 7)(citing (R. 17A, 348)). The VE testified that hand mounter was a representative job available to an individual with the RFC assessed. (R. 349). The ALJ asked the VE if his testimony was consistent with the DOT. (R. 354). Although the VE noted certain inconsistencies with the DOT, none of the inconsistencies noted are relevant to this issue. Id. Moreover, the VE explained the inconsistencies, and the ALJ found that the explanation is reasonable. (R. 24-25). Therefore, the ALJ was justified in relying upon the VE testimony that hand mounter is a representative job available to an individual with the RFC assessed for plaintiff. Plaintiff presents no VE testimony or other vocational authority for the premise that the requirements of the job of hand mounter are inconsistent with the RFC assessed.

-17-

Plaintiff's argument based upon the common definitions of "simple" and "detailed" is insufficient to overcome the specific testimony of the vocational expert.  As used in the DOT and in the RFC assessed, the terms "simple" and "detailed" have meanings which are within the expertise of a VE.  Plaintiff and his attorney are not qualified vocational experts with the expertise to controvert the testimony of the VE.  Moreover, plaintiff cites to no vocational authority contrary to the VE testimony.  The record contains the Curriculum Vitea of the VE (R. 55-56), and plaintiff's representative indicated at the hearing that she had reviewed the curriculum vitea and had no objection to the VE's testifying as an expert.  (R. 345).  Nor does plaintiff argue on review that the VE is not qualified.  Rather, he argues that the VE did not explain why his testimony differed from the job description in the DOT.  (Pl. Br. 8).  Although plaintiff asserts the VE testimony differs from the DOT job description, he has presented nothing other than his interpretation of common definitions to establish the alleged difference.

Plaintiff presents no VE testimony or other vocational source authority to establish a conflict between the job description and the VE testimony at the hearing.  The VE testified that an individual with plaintiff's RFC is able to perform the requirements of the job of a hand mounter.  Based upon the VE's testimony, the job's requirement to work with

"detailed but uninvolved written or oral instructions" can be understood to be consistent with plaintiff's RFC for simple, unskilled work and the ability to understand and carry out simple instructions and tasks.  Therefore, the court finds no conflict, finds that the ALJ was justified in relying upon the VE testimony regarding work as a hand mounter, and finds no failure to reconcile any alleged conflict.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings as discussed herein.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 31st day of October 2008, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**


-19-